UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

F. PARKER HEINEMANN and SUSAN VOIGT,

    Plaintiffs,

v.

ROSEANNE PATCHEY,

    Defendant.

No. 3:16-cv-774 (MPS)

**RULING ON PRELIMINARY INJUNCTION**

    This case arises out of a dispute over the management of the affairs of Plaintiff F. Parker Heinemann, a man in his eighties in Old Saybrook, Connecticut. On April 13, 2016, at the request of his wife and children, a court in Florida declared Mr. Heinemann to be incompetent and appointed an emergency temporary guardian for him, defendant Roseanne Patchey. (ECF Nos. 10-2 at 2, 17-1 at 1, 17-2 at 5-6.) One day later, on April 14, 2016, a court in Connecticut declared Mr. Heinemann to be *competent*, and appointed his companion, Plaintiff Susan Voigt, to be voluntary conservator of his person and estate. (ECF No. 10-2 at 5-6.)  On May 19, 2016, Mr. Heinemann and Ms. Voigt initiated this federal action, bringing Fourth and Fourteenth Amendment claims against Ms. Patchey under 42 U.S.C. § 1983 ("Section 1983"). (ECF No. 1.)

    Plaintiffs seek a preliminary injunction to prevent Ms. Patchey from bringing Mr. Heinemann to Florida and interfering with his financial accounts. (ECF No. 10.)[1] As set forth below, the preliminary injunction is DENIED, because it appears that Ms. Patchey was not acting under color of state law as required to sustain a Section 1983 claim. Plaintiffs have therefore not shown a likelihood of success on the merits or sufficiently serious questions going to the merits of the claim.

---

[1] Ms. Patchey has also filed a motion to stay (ECF No. 15), which I do not address in this ruling.

1

## I. Background

*A. Initial State Court Proceedings*

On February 10, 2016, Mr. Heinemann's son filed an application for involuntary guardianship in the Circuit Court of Florida. *In Re: Frank Parker Heinemann*, Nos. 16-GA-41 and 16-GA-42 (Fla. Cir. Ct.); *see also* ECF Nos. 10-2 at 2, 17-1 at 1. The court held at least one hearing on the application, at which Mr. Heinemann's wife and children were present or represented. *Id.*

In March 2016, aware of the pending Florida action, Mr. Heinemann's attorney, Howard Gould, filed a voluntary application in Connecticut Probate Court to have Ms. Voigt appointed as Mr. Heinemann's conservator of person and estate. (ECF No. 10-2 at 1-2.) On March 23, 2016, the Probate Court held a hearing on the application, which was opposed by Mr. Heinemann's wife and children. (*Id.* at 5.)

On April 13, 2016, the Florida Circuit Court determined that Mr. Heinemann was incompetent and appointed Ms. Patchey to be his emergency temporary guardian under Fla. Stat. § 744.3031. (ECF No. 17-2 at 5-6.) The letter of emergency temporary guardianship stated that Ms. Patchey had power "to contract; to sue or defend lawsuits; to control and manage property and income from any source; to apply for government benefits; to determine residence; to consent to medical and mental health treatment…." (*Id.* at 5.) The letter added that "[t]he emergency temporary guardian is further authorized and directed to travel to Connecticut to assist FRANK PARKER HEINEMANN in his return to Florida. Pursuant to Fla. Stat. § 731.3031(5), all interested persons are restrained from interfering with the emergency temporary guardian in her efforts to return FRANK PARKER HEINEMANN to Florida." (*Id.*) The authority of the emergency temporary guardian appointment was set to expire in ninety days. (*Id.* at 6.)

2

On April 14, 2016, the Connecticut Probate Court appointed Ms. Voigt the conservator of the person and the estate of Mr. Heinemann under Conn. Gen. Stat. § 45a-646, with certain special conditions. (ECF No. 10-2 at 5-6.) The court noted that the "case has a unique twist in that there is a pending Petition for Guardianship concerning Mr. Heinemann in the State of Florida," but found that it did have jurisdiction. (*Id.* at 5.) The court also found that Mr. Heinemann had "the requisite understanding necessary to request a Conservator on a voluntary basis," and that "the possibility of undue influence is muted" by the fact of Mr. Heinemann's and Ms. Voigt's "unique relationship, in that Mr. Heinemann remains married, but has been with Ms. Voigt in some capacity, (friend, caretaker, companion) for approximately thirty years." (*Id.* at 6.)

On May 4, 2016, Mr. Heinemann filed an initial appeal of the Florida Circuit Court's appointment of Ms. Patchey as temporary emergency guardian. The state court docket reflects a "NOTICE OF APPEAL TO 2ND DCA ON NON-FINAL ORDER RENDERED 4/13/2016." *In Re: Frank Parker Heinemann*, Nos. 16-GA-41 and 16-GA-42 (Fla. Cir. Ct.).

On May 11, 2016, Mr. Heinemann's wife filed an appeal of the Connecticut Probate Court's appointment of Ms. Voigt as conservator. *Denise Heinemann v. F. Parker Heinemann*, No. MMX-CV-16-6015584-S (Conn. Super. Ct.); *see also* ECF No. 28-1 at 4-8.

B. This Federal Action

On May 19, 2016, Mr. Heinemann and Ms. Voigt filed this lawsuit, bringing Fourth and Fourteenth Amendment claims under Section 1983 against Ms. Patchey. (ECF No. 1.) In the complaint, the plaintiffs alleged that Ms. Patchey, "acting under color of law, has contacted local law enforcement officials and requested assistance in forcibly abducting and transporting the plaintiff, Heinemann, to Florida against his will and contrary to the decree of the Connecticut

Probate Court." (*Id.* ¶ 7.) They also alleged that Ms. Patchey had directed third party financial institutions to freeze Mr. Heinemann's accounts. (*Id.* ¶¶ 8-9.)

On August 24, 2016, plaintiffs filed a motion for preliminary injunction, asking me to enjoin Ms. Patchey from moving Mr. Heinemann to Florida, order her to return any seized funds, and order her to rescind any directives to third party financial institutions regarding such funds. (ECF No. 10.) Attorney Gould and Ms. Voigt submitted affidavits supporting that motion.

Regarding transportation to Florida, Ms. Voigt stated that Mr. Heinemann's last visit to Florida had left him "shaken," and "hesitant to visit his family in Florida again," because Mr. Heinemann's family had him arrested, briefly detained by local police, and involuntarily admitted to a psychiatric facility. (ECF No. 10-3 ¶ 5.) Attorney Gould agreed that Mr. Heinemann "does not want to be transported to Florida, and is very fearful that the Florida order will be implemented against his wishes." (ECF No. 10-2 at 2.) Neither affidavit directly claimed that Ms. Patchey had taken actions to move Mr. Heinemann to Florida, but Attorney Gould did assert that Mr. Heinemann's "fear was heightened when he was advised that 1) the Connecticut conservator had been contacted by the Defendant to facilitate such arrangements; and 2) the Old Saybrook Police had also been contacted to 'assist' in the process." (*Id.* at 3.)

As for the financial issues, Attorney Gould explained that local managers at Liberty Bank and Wells Fargo told him that no one could access Mr. Heinemann's accounts because "the Defendant asserted that the assets were under the control of the Florida courts." (*Id.*) The Vanguard Group also stated that no one could access Mr. Heinemann's account until the conflict over who had legal authorization was resolved. (*Id.* at 3-4.) According to Ms. Voigt, these financial restrictions prevented her from paying the costs of Mr. Heinemann's health care, namely a visiting nurse, a physical therapist, and a home healthcare aide. (ECF No. 10-3 ¶ 6.)

*C. Current Status of State Court Proceedings*

After this case was filed, on August 24, 2016, Liberty Bank initiated a separate action in Connecticut to determine adverse claims to Mr. Heinemann's funds. *Liberty Bank v. Susan Voigt and Roseanne Patchey*, No. MMX-CV-16-6016170-S (Conn. Super. Ct.); *see also* ECF No. 28 at 2. On November 29, 2016, the Connecticut Superior Court ordered Liberty Bank to "honor any and all requests from Susan Voigt acting as fiduciary for Frank Parker Heinemann for the withdrawal of funds held on Mr. Heinemann's behalf at Liberty Bank." (ECF No. 28-3 at 1.)

While the appeal was pending in the Florida action, the Circuit Court issued a stay of its order appointing Ms. Patchey as emergency temporary guardian. *In Re: Frank Parker Heinemann*, Nos. 16-GA-41 and 16-GA-42 (Fla. Cir. Ct.); *see also* ECF Nos. 21 at 5, 28 at 2. Then, on March 9, 2017, the Florida Second District Court of Appeals affirmed the Circuit Court's decisions denying Mr. Heinemann's earlier motions to dismiss and to terminate the emergency appointment. (ECF Nos. 28 at 2, 28-2 at 1-3.) A hearing on whether the Circuit Court should terminate its current stay of Ms. Patchey's guardianship appointment is scheduled for April 5, 2017. (ECF No. 28 at 2.)

The Connecticut Superior Court has scheduled a hearing on the appeal of the Connecticut Probate Court's appointment of Ms. Voigt as conservator for June 16, 2017. (ECF No. 28 at 1-2.)

**II.     Legal Standard**

"[D]istrict courts may grant a preliminary injunction where a plaintiff demonstrates irreparable harm and meets one of two related standards: either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (citation and quotation marks omitted). District courts have wide discretion in

5

determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "Such relief, however, is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* at 510 (citation and quotation marks omitted). "Generally, the district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when essential facts are not in dispute." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir. 1997).

### III. Discussion

Plaintiffs' motion for preliminary injunction fails because they have failed to demonstrate sufficiently serious questions going to the merits of their claim.[2] Specifically, it does not appear that Ms. Patchey, as an emergency temporary guardian appointed for Mr. Heinemann by the Florida court, acted under color of state law for purposes of Section 1983.

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). To satisfy Section 1983's state action requirement, "the allegedly

---

[2] I also ordered the parties to show cause why the case should not be dismissed for lack of subject matter jurisdiction under *Rooker-Feldman*, the doctrine that precludes district courts from hearing "suits that are, in substance, appeals from state-court judgments," *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 84 (2d Cir. 2005). (ECF No. 22.) For *Rooker-Feldman* to apply, "the state-court judgment must have been 'rendered before the district court proceedings commenced'—i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation." *Id.* at 85. Here, the Florida state court litigation was ongoing at the time the plaintiffs filed this federal lawsuit: the Florida temporary emergency guardian appointment (termed a "non-final order" by the state court) was on appeal. Further, by its terms, the order expired in ninety days. (ECF No.1-2 at 2.) *Rooker-Feldman* therefore does not bar the plaintiffs' claim. *See also Green v. Mattingly*, 585 F.3d 97, 103 (2d Cir. 2009) (temporary child custody order was not final for *Rooker-Feldman* purposes, although "[i]f, at the completion of her appeal [through higher state courts], plaintiff were to bring a § 1983 action in federal court seeking the return of her child…. the *Rooker–Feldman* doctrine would likely apply.")

unconstitutional conduct must be fairly attributable to the state. Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (internal citations and quotation marks omitted).

First, "it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997). *See also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (public defenders do not act under color of state law). Following the same logic, the Second Circuit has held that guardians appointed for children in family court proceedings do not act under color of state law and thus cannot be sued under Section 1983. *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015). The court reasoned that "the analogy of a law guardian to a public defender is apt. Although both are supplied and funded by the state, each acts according to the best interests of the client with no obligation to the mission of the state." *Id.* (quotation marks and citation omitted).

For the same reasons, court-appointed administrators, guardians, or conservators for adults—like Ms. Patchey in this case—do not act under color of state law. *See, e.g. Terry v. Cty. of Suffolk, N.Y.*, 654 F. App'x 5, 5-6 (2d Cir. 2016) (summary order) ("[G]uardian, who was appointed by a state court for an elderly woman," could not be sued under Section 1983, because he "was required by Mental Hygiene Law to act in the best interests of [the elderly woman] and is not a state actor."); *Mitchell v. Connecticut Region 14 Dist. Prob. Court*, 2015 WL 4094188, at *5 (D. Conn. July 7, 2015) ("Despite the fact that various defendants were alleged to have been appointed by the probate court as trustees or administrators of the living trust, this does not suffice

to establish that their subsequent actions constituted state action for purposes of liability under Section 1983."); *Sasscer v. Barrios-Paoli*, 2008 WL 5215466, at *5 (S.D.N.Y. Dec. 8, 2008) ("Complaint alleges that [Defendants] were appointed as Plaintiff's guardians *ad litem*… and that [they] violated due process when they filed 4 years of Plaintiff's tax returns…But, guardians *ad litem*, although appointed by the court, exercise independent professional judgment in the interests of the clients they represent and are therefore not state actors for purposes of Section 1983." (quotation marks and alterations omitted)); *Rzayeva v. United States*, 492 F. Supp. 2d 60, 81 (D. Conn. 2007) ("Because a court-ordered conservator exercises independent professional judgment in the interest of his client, he cannot be considered a state actor…. The fact that an individual is appointed by the state and paid with state funds is insufficient to render an individual a state actor.").

Here, Ms. Patchey was an emergency temporary guardian appointed by the Florida Circuit Court, with a duty to "faithfully perform the duties of a guardian" for the period of her appointment. Fla. Stat. § 744.3031; ECF No. 17-2 at 5. *See also In re Guardianship of Beck*, 204 So. 3d 143, 148 (Fla. Dist. Ct. App. 2016) ("The fact that the statutory title… is 'emergency temporary guardian' … establish[es] that unless or until a plenary or limited guardianship is established or the emergency temporary guardianship expires, Ms. Yates is a guardian."). In Florida, guardians are required to "act as they feel the wards themselves would act. This ['substituted judgment'] standard places the guardian in the shoes of the ward when making decisions." *Rainey v. Guardianship of Mackey*, 773 So. 2d 118, 121-22 (Fla. Dist. Ct. App. 2000). As Mr. Heinemann's emergency temporary guardian, Ms. Patchey allegedly attempted to control his financial accounts and requested assistance from local law enforcement to move him to Florida.

(ECF No. 1 ¶¶ 7-9.)[3] In taking those actions, although Ms. Patchey may have been "supplied and funded by the state," her duty as emergency temporary guardian was to act on behalf of Mr. Heinemann, "with no obligation to the mission of the state." *Milan*, 808 F.3d at 964.[4]

Therefore, it does not appear that Ms. Patchey acted or is acting under color of state law in her role as emergency temporary guardian, and Plaintiffs have failed to demonstrate either a likelihood of success of the merits or sufficiently serious questions going to the merits of their claims to make them fair grounds for litigation. *Otoe-Missouria*, 769 F.3d at 110.[5]

### IV.  Conclusion

For the foregoing reasons, the motion for preliminary injunction (ECF No. 10) is DENIED.


IT IS SO ORDERED.

                                    /s/
                         Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           March 24, 2017

---

[3] I note that the affidavits attached to the motion for preliminary injunction do not directly state that Ms. Patchey in fact contacted local police, and nowhere do the plaintiffs claim that the police—who *are* state actors—took any action to assist Ms. Patchey.

[4] Plaintiffs also argue that "[t]he basis of this litigation is the fact that the Defendant has exceeded and abused any authority the Florida court appointment may have granted her by acting outside the jurisdiction of Florida and inside the jurisdiction of Connecticut and other states." (ECF No. 24 at 3.) If true, this only confirms that Ms. Patchey was not acting under color of state law.

[5] Having made this finding, I need not consider whether plaintiffs have shown they will suffer irreparable harm, though I note that both the Florida court's stay on Ms. Patchey's temporary emergency guardian appointment and the Connecticut court's decision to allow Ms. Voigt to withdraw Mr. Heinemann's funds from Liberty Bank weaken plaintiffs' arguments on that issue. I also need not reach Ms. Patchey's arguments regarding the applicability of the Anti-Injunction Act, 28 U.S.C. § 2283, or various abstention doctrines. (*See* ECF No. 25 at 4-6.)